UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:22-CR-47 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| HAROLD STERLING | ) | JANUARY 5, 2026 |
| | ) | |
| | ) | |

**ORDER GRANTING MOTION FOR SENTENCE REDUCTION AND DIRECTING THE BOP TO RELEASE THE DEFENDANT**
**(ECF No. 90)**

Kari A. Dooley, United States District Judge:

Defendant Harold Sterling has moved pursuant to 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction and an order of compassionate release from confinement[1] in light of, principally, his need to undergo knee surgery, which can, he posits, be more efficiently and sooner accomplished if he is released from the custody of the Bureau of Prisons (BOP).

The Government opposes the motion on the grounds that Mr. Sterling's preferred course of medical treatment does not rise to the level of an extraordinary and compelling reason warranting a sentence reduction and, alternatively, that the Section 3553(a) sentencing factors counsel against release. For the reasons that follow, the motion is GRANTED.

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) upon motion of the Director of the BOP, or (2) upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request

---

[1] Mr. Sterling was convicted of possession with intent to distribute 40 grams or more of a substance containing a detectable amount of fentanyl. He was sentenced to the mandatory minimum period of incarceration of 60 months.

by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). In this vein, Mr. Sterling appears to have met this second requirement because the Warden did not respond to the defendant's request for release within 30 days of the request having been made.

Upon exhaustion of a defendant's administrative remedies, § 3582(c)(1)(A) provides that a district court "may reduce" a defendant's term of imprisonment "after considering the factors set forth in section 3553(a)," if it finds "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c)(1)(a); *United States v. Brooker*, 976 F.3d 228, 235 (2d Cir. 2020). A district court's "reasonable evaluation of the Section 3553(a) factors is an alternative and independent basis for denial of compassionate release." *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021).

On August 31, 2024, Mr. Sterling injured his knee playing football during recreational time while incarcerated. He was examined in the emergency room, and x-rays were taken, but he was not diagnosed with any specific structural damage or injury. His symptoms of swelling and pain did not abate, and it was ultimately determined that he would require surgery to repair the damage to his ACL. The target date for the surgery was set for March 2025. In February 2025, Mr. Sterling was eligible for transfer to a lower security facility. But his status as an inmate awaiting a medical procedure resulted in a "medical hold," which would preclude the transfer. Accordingly, Mr. Sterling "refused" surgery as a means of releasing the medical hold, allowing him to be transferred. At his next facility, Mr. Sterling again "refused" surgery in order to, hopefully, expedite release to a halfway house. Mr. Sterling is presently at the Drapelick Reentry Center, a halfway house, but he remains in the custody of the BOP. While at the Drapelick Center, he has renewed his interest in obtaining the ACL surgery he needs. He has been advised that additional pre-surgery tests will

need to be undertaken, to include an MRI and pre-surgical appointments with a number of medical providers. He expresses grave concern as to the time it will take to meet these requirements and seeks compassionate release so that he can arrange for this medical care on his own through his privately chosen medical providers. Mr. Sterling has served, to date, just over 46 months of his 60-month sentence. The BOP website reflects a release date of July 8, 2026.

The Government opposes the Defendant's motion, arguing first that the need for ACL surgery is a far cry from the types of medical conditions contemplated under the Guidelines policy statements, which include circumstances such as terminal illness or other medical needs that the BOP cannot adequately address. Gov't Opp'n, ECF No. 93, at 7–9.[2] The Government further asserts that, in essence, Mr. Sterling is the architect of the situation in which he finds himself, insofar as he eschewed surgery in favor of transfers while in BOP custody. *Id.* at 8. Finally, the Government asserts that Mr. Sterling has not established that he will be unable to have the needed ACL surgery if he remains within BOP custody at the Drapelick Center. Rather, he has only established that there are prerequisites to having the surgery, which may or may not be accomplished in the coming weeks and months. *Id.* Finally, the Government argues that the Section 3553(a) factors counsel against early release in light of, primarily, the seriousness of Mr. Sterling's offense (trafficking fentanyl) when coupled with his criminal history.

In Reply, Mr. Sterling accepts that a portion of the delay in obtaining surgery was of his own doing, and he does not seek compassionate release for any delay occurring between February 2025, and September 11, 2025, when he was transferred to the Drapelick Center. Rather, he seeks

---

[2] The Government observes that, while at the halfway house, Mr. Sterling has been working as a landscaper and also at Target with a 40-hour work week. These jobs, it is posited, undermine Mr. Sterling's claim that his pain is debilitating or that immediate surgery is necessary. *See* Gov't Opp'n at 9. In Reply, Mr. Sterling avers that he was required to leave his job at Target in November 2025, as his knee pain was incompatible with the work schedule. Reply, ECF No. 95, at 4.

compassionate release in light of the 6-month delay following the injury until February 2025, and the hurdles and delays he continues to face at the Drapelick Center. Specifically, he reports that he obtained the requisite blood work at Quest Diagnostics (first prerequisite) on November 4, 2025, and immediately scheduled a follow-up appointment with Charter Oak (second prerequisite) for November 14, 2025, so that he could then schedule an MRI (third prerequisite) in advance of surgery (the goal). Although his case manager timely requested permission for Mr. Sterling to attend the follow-up appointment at Charter Oak, the BOP did not approve his pass in time. As of November 24, 2025, no follow-up appointment at Charter Oak has been scheduled. It is unclear why that is. Finally, he reiterates the very modest reduction in sentence he seeks so that he can hopefully, quickly, attend to the needed ACL reconstructive surgery.

**Compelling and Extraordinary Circumstances**

Mr. Sterling needs surgery to reconstruct his ACL. And there is little question that there has been a delay in obtaining the surgery during his period of incarceration. While the initial delays in scheduling an MRI were certainly frustrating, a diagnosis of a *possible* ACL tear was not made until October 24, 2024. The MRI confirming this diagnosis occurred within 6 weeks on December 3, 2024. It was within 3 months of this date that Mr. Sterling "refused" surgery.[3] In light of this timeline and series of events, the passage of six months between the date of (as yet undiagnosed) injury and February 2025 is not an extraordinary and compelling reason to grant compassionate release.

Further, the Court cannot excise from the analysis the role Mr. Sterling played in the ultimate delay in scheduling his surgery. It is simply impossible to know whether the surgery

---

[3] The Court accepts counsel's representation that Mr. Sterling was unaware, in February 2025, that a "target date" of March 25, 2025, had been set for the surgery.

4

would have already occurred, thus obviating the need for the instant motion, had he not twice eschewed surgery while incarcerated.

However, the same cannot be said of the events unfolding after his transfer to the Drapelick Center, when Mr. Sterling renewed his request for the necessary surgery. He arrived at the Drapelick Center on September 11, 2025. It appears little progress has been made despite Mr. Sterling's efforts, and at least one necessary appointment did not occur because the BOP did not timely approve his pass to attend the appointment. On the present record, the Court has little confidence that Mr. Sterling will be able to undergo this necessary surgery in the coming months if he remains in BOP custody. He has demonstrated that the injury continues to deteriorate with significant pain and mobility restrictions. The injury, as yet untreated, has limited his job opportunities at a time when he is supposed to be preparing for transition back into the community, which will include, it is expected, gainful employment. Finally, Mr. Sterling has almost completed his sentence, and in granting his motion, the Court recognizes that he will be immediately beginning his period of supervision with the United States Probation Office. So while this injury would not ordinarily present extraordinary and compelling reason to reduce the sentence to time served, for these reasons, the Court concludes otherwise in Mr. Sterling's case.

**Section 3553(a) Factors**

Nor does consideration of the Section 3553(a) factors counsel against granting the motion. The crime of fentanyl trafficking at the quantities at issue here is exceedingly serious. No one could argue to the contrary. And Mr. Sterling has a troubling and lengthy criminal history. But at sentencing, the defense identified multiple factors in mitigation, which, in the defense view, would have provided a basis for a downward variance but for the mandatory minimum sentence required. The Court elected the mandatory minimum sentence as opposed to the higher sentence advocated

5

by the Government upon consideration of these mitigating factors. Having now almost completed the sentence imposed, the proposed reduction does not upend or otherwise lay waste to the purposes of sentencing or the factors the Court found significant in choosing the 60-month period of incarceration.

The Court also observes that Mr. Sterling has participated in multiple programming opportunities; has remained discipline free while in custody; has worked steadily and has a family-centered release plan that will contribute to his continued success on supervised release.

Mr. Sterling's motion for compassionate release under § 3582(c)(1)(A) is GRANTED. He shall be released as soon as practicable, but no later than **5 p.m. on January 7, 2026**. The Clerk is directed to deliver a copy of this Order to the U.S. Marshals for delivery to the Drapelick Center and the BOP. The Clerk is further directed to deliver a copy of the Order to the United States Probation Office.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of January, 2026.

                                               */s/ Kari A. Dooley*
                                               KARI A. DOOLEY
                                               UNITED STATES DISTRICT JUDGE